IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

SOPHIA RATLIFF

     v.               :  Civil Action No. 11-0813

COSTAR REALTY INFORMATION,
INC., et al.

## MEMORANDUM OPINION

Presently pending and ready for resolution in this employment discrimination action is a motion to compel arbitration filed by Defendants Costar Realty Information, Inc., and Marcie Wallis. (ECF No. 12). The issues are fully briefed and the court now rules pursuant to Local Rule 105.6, no hearing being deemed necessary. For the reasons that follow, Defendants' motion will be granted.

## I.  Background

In September 2008, Plaintiff Sophia Ratliff was hired by Defendant CoStar Realty ("CoStar") to work as a research assistant. CoStar, "a national company, with 27 offices located . . . across more than 20 states," is engaged in the business of selling "commercial real estate products on a market-by-market or national basis." (ECF No. 14, Decl. of Christopher Winters, CoStar Deputy General Counsel, at ¶ 2). As a research assistant, Plaintiff's job involved "call[ing] commercial real

estate market participants in all 50 states and engag[ing] in communications that cross[ed] state lines regularly." (*Id.* at ¶ 5).

On September 24, 2008, Plaintiff signed an agreement setting forth the relevant terms and conditions of her employment with CoStar ("the agreement"). (ECF No. 2-1).[1] The agreement included an arbitration clause, which provided, in relevant portion:

> In the event of any dispute, claim or controversy cognizable in a court of law between the Company and the Employee concerning any aspect of the employment relationship, including disputes upon termination, the parties agree to submit such dispute to final and binding arbitration before a single arbitrator pursuant to the provisions of the American Arbitration Association's Employment Dispute Resolution Procedures. The parties acknowledge that this obligation to arbitrate disputes applies to claims for discrimination or harassment under . . . Title VII of the Civil Rights Act of 1964, . . . Sections 1981 through 1988 of Title 42 of the United States Code, . . . Maryland Code Ann., Art. 49B, § 1 et seq., as well as any other federal, state, or local law, ordinance, or regulation, or based on any public policy, contract, tort, or common law or any claim for costs, fees, or other

_____

[1] Costar general counsel Jonathan Coleman signed the agreement on September 26, 2008, two days after Plaintiff. To the extent Plaintiff questions the validity of the agreement because a Costar representative did not sign contemporaneously, the agreement specifically provides that it "may be executed in any number of counterparts, all of which when taken together shall constitute one and the same Agreement." (*Id.* at ¶ 4.12).

> expenses including attorney's fees. All
> claims and defenses which could be raised
> before a government administrative agency or
> court must be raised in arbitration and the
> arbitrator shall apply the law accordingly.

(*Id*. at ¶ 4.11(a)).

By its terms, the arbitration provision "extend[ed] not only to disputes between [Plaintiff] and [CoStar], but also to disputes between [Plaintiff] and [CoStar's] officers, directors, employees and agents that arise out of [Plaintiff's] employment . . . or the termination of that employment." (*Id*.). Any demand for arbitration was required to be made in writing and served "no later than the expiration of the applicable statute of limitation period under governing law" for any dispute. (*Id*. at ¶ 4.11(b)). CoStar agreed to pay "[t]he costs of commencing the arbitration and the remainder of the arbitration fees." (*Id*. at ¶ 4.11(f)). According to the agreement, Plaintiff acknowledged, by her signature, (1) that she "had at least 21 days to consider" the arbitration provision; (2) her understanding that "acceptance of binding arbitration . . . can be revoked any time within seven (7) days;" and (3) that she signed "knowingly, voluntarily, and free from duress or coercion." (*Id*. at ¶ 4.11(h)). Just above the signature line, the agreement recited, in bold letters, "Employee understands that by signing this Agreement, Employee agrees to resolve certain disputes with the Company by means of binding

3

arbitration as set forth in paragraph 4.11, above." (*Id*. at 6 (emphasis removed)). The agreement further provided that it was to be "governed by the laws of Maryland" (*id*. at ¶ 4.4) and take effect "on the first day that [Plaintiff] report[ed] to work" (*id*. at 1).[2]

Plaintiff, an African-American, commenced her employment with Costar on September 29, 2008. (ECF No. 2 ¶ 32). Beginning in spring 2009, she came to believe that "she and other minorities were being systematically singled out by management on the basis of their race and/or national origin." (*Id*. at ¶ 15). Plaintiff lodged a number of complaints regarding supervisors with CoStar's human resources department, which resulted in a series of transfers to different supervisors. Ultimately, Plaintiff came to be supervised by Defendant Marcie Wallis, whom she believed was "distant and unavailable for direction when Plaintiff sought her advice as to how to do her job[.]" (*Id*. at ¶ 23). At some point, Ms. Wallis commenced an "investigation" of Plaintiff, "which led to [a] charge [that

---

[2] There are discrepancies in Plaintiff's various papers as to when she first reported to work. Her complaint indicates that her first day was September 29. (ECF No. 2 ¶ 11). In an affidavit attached to her motion papers, she indicates that she started on September 26 and that she signed the agreement on the same date. (ECF No. 23-2, Ex. 1, at ¶¶ 2, 5). The agreement itself, however, indicates that Plaintiff signed on September 24. (ECF No. 2-1, at 6). Defendants do not challenge the sufficiency of the affidavit, but it lacks a notary seal. Nevertheless, the actual date Plaintiff signed the agreement in relation to her start date is immaterial.

Plaintiff] willfully enter[ed] false information into the [CoStar] data bank." (*Id*. at ¶ 23). Plaintiff was terminated on June 5, 2009, purportedly in connection with that charge.

Plaintiff commenced this action on February 6, 2011, by filing a complaint in the Circuit Court for Montgomery County, Maryland, asserting, *inter alia*, racial discrimination and retaliation in violation of Title VII, 42 U.S.C. § 2000e, *et seq*., and Title 20 of the State Government Article of the Maryland Code. (ECF No. 2).[3] Defendants timely removed to this court (ECF No. 1) and answered the complaint (ECF No. 7).

Shortly thereafter, Defendants separately filed the instant motion to compel arbitration, a supporting memorandum, and the declaration of Costar deputy general counsel Christopher Winters. (ECF Nos. 12, 13, 14). Plaintiff opposed Defendants' motion on May 4, 2011 (ECF No. 23), and Defendants filed reply papers on May 23 (ECF No. 24).

## II.  Standard of Review

"Before the Federal Arbitration Act ["FAA"] becomes applicable [to an arbitration agreement] . . . two findings must be made: (1) there was an agreement in writing providing for arbitration and (2) the contract evidences a transaction

---

[3] Plaintiff asserts that she "timely filed" a complaint "with the Montgomery County Office of Human Rights (MCOHR) on or about April 8, 2010[,] where a mediation session was processed." (ECF No. 2 ¶ 3).

involving interstate commerce." *American Home Assurance Co. v. Vecco Concrete Constr. Co.*, 629 F.2d 961, 963 (4th Cir. 1980). Here, it is undisputed that the written agreement contains an arbitration provision and Mr. Winters' declaration, unchallenged by Plaintiff, establishes that CoStar's business – and, indeed, Plaintiff's job – involved communications and transactions across state lines. Thus, despite Plaintiff's unsupported argument to the contrary, the FAA governs the parties' agreement.

Under the FAA, "[a] written provision in . . . a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. In considering whether an agreement to arbitrate is enforceable, courts must be "mindful of the FAA's purpose 'to reverse the longstanding judicial hostility to arbitration agreements . . . and to place arbitration agreements upon the same footing as other contracts." *Green Tree Fin. Corporation-Alabama v. Randolph*, 531 U.S. 79, 89 (2000) (quoting *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 24 (1991)). "[E]ven claims arising under a statute designed to further important social policies may be arbitrated because so long as the prospective litigant effectively may vindicate [his or her]

statutory cause of action in the arbitral forum, the statute serves its functions." *Randolph*, 531 U.S. at 90 (internal marks and citation omitted).

When an issue in a judicial proceeding is referable to arbitration, the FAA requires the court, upon the motion of a party, to stay the proceedings until that issue is arbitrated. *See* 9 U.S.C. § 3; *E.E.O.C. v. Waffle House, Inc.*, 534 U.S. 279, 289 (2002). "[D]ismissal is a proper remedy," however, "when all of the issues presented in a lawsuit are arbitrable." *Choice Hotels Intern., Inc. v. BSR Tropicana Resort, Inc.*, 252 F.3d 707, 709-10 (4th Cir. 2001).

## III. Analysis

### A. Consideration

In deciding a motion to compel arbitration, district courts must "engage in a limited review to ensure that the dispute is arbitrable – i.e., that a valid agreement to arbitrate exists between the parties and that the specific dispute falls within the substantive scope of that agreement." *Hooters of Am., Inc. v. Phillips*, 173 F.3d 933, 938 (4th Cir. 1999) (internal marks and citation omitted). In so doing, courts apply "ordinary state-law principles that govern the formation of contracts." *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995).

Under Maryland contract law, a legally binding agreement must be supported by sufficient consideration. *See Cheek v. United Healthcare of the Mid-Atlantic, Inc.*, 378 Md. 139, 147 (2003). A promise may become consideration for another promise only when it constitutes a binding obligation. *Id.* at 148. When a promise is composed of words in a promissory form that do not actually bind or obligate the promisor to do anything, the promise is said to be "illusory" and does not constitute consideration. *Id.* at 148-49.

Plaintiff argues that the arbitration clause in the instant agreement is illusory because the "CoStar Employee Handbook," which is given to each employee upon commencement of employment, provides that CoStar "has the right, with or without notice, . . . to change any of its guidelines, policies, practices, working conditions or benefits at any time." (ECF No. 23-2, Ex. 2, at 2 (emphasis removed)). Thus, according to Plaintiff, any promise made by CoStar in the agreement is "not binding, the requisite consideration is absent [and] the contract is illusory and unenforceable." (ECF No. 23-1, at 8).

As support for this argument, Plaintiff relies on *Cheek v. United Healthcare of the Mid-Atlantic, Inc.*, 378 Md. 139. In that case, the plaintiff received a copy of the defendant employer's handbook on his first day of work and signed an acknowledgment form indicating that he had "'specifically

received and reviewed,' among other things, an 'Internal Dispute Resolution/Employment Arbitration Policy'" summarized in the handbook, and that he "agree[d] to submit all employment-related disputes . . . to arbitration under [the employer's] policy." *Id*. at 143. The arbitration policy itself gave the employer the right to "alter, amend, modify, or revoke the [policy] at its sole and absolute discretion at any time with or without notice." *Id*. at 142-43. The Court of Appeals of Maryland observed that "the plain and unambiguous language of [this] clause" allowed the employer "to revoke the Employment Arbitration Policy even after arbitration is invoked, and even after a decision is rendered, because [the employer] can 'revoke' the Policy 'at any time.'" *Id*. at 149. Under those circumstances, the court determined, the employer's "'promise' to arbitrate employment disputes is entirely illusory, and therefore, no real promise at all." *Id*. at 149.

The instant case is readily distinguishable from *Cheek*, however, because the arbitration clause and employee handbook at issue are separate documents. The Fourth Circuit addressed similar facts in *Hill v. Peoplesoft USA, Inc.*, 412 F.3d 540 (4th Cir. 2005). There, the appellee argued that, under *Cheek*, a comprehensive arbitration agreement was illusory where a separate "Internal Dispute Solution" program permitted the employer "to 'change' the program 'without notice.'" *Id*. at

542. The court found that this argument ignored a "critical" and "obvious" distinction:

> Unlike this case, the reservation of rights in *Cheek was contained* in the arbitration policy. Looking at the *four corners* of the arbitration policy in *Cheek*, the court understandably concluded that the policy contained an illusory promise. In the instant case, by contrast, looking at the four corners of the separate Arbitration Agreement, the agreement contains no such illusory promise. To be sure, it is only when we are asked to look beyond the four corners of the Arbitration Agreement and examine the IDS Program – something *Cheek* tells us we are not allowed to do – that Hill's argument finds its support.
>
> In sum, the district court simply was not at liberty to go beyond the language of the Arbitration Agreement in determining whether the agreement contained an illusory promise. When one examines the language of the Arbitration Agreement itself, only one conclusion is tenable – the agreement is binding and enforceable.

*Hill*, 412 F.3d at 544 (emphasis in original; internal citation omitted).

Here, it is undisputed that the agreement to arbitrate was not a policy or benefit contained in the employee handbook. Indeed, the handbook itself recites, "neither this handbook nor any other CoStar guidelines, policies or practices creates an employment contract." (ECF No. 23-2, Ex. 2, at 2 (emphasis removed)). It further clarifies that "many matters covered . . . are described in separate official documents," which "always

are controlling over any statement made in this handbook or by any supervisor or manager." (*Id.*). The agreement, therefore, was not affected by CoStar's unilateral ability to change or revoke the policies set forth in its employee handbook. Because the agreement is a separate document, the court must limit its search for supporting consideration to its four corners, as *Hill* and *Cheek* instruct.

In so doing, it is clear that the agreement imposes mutual obligations on Plaintiff and CoStar. Most notably, it requires "the parties to submit [any] dispute to final and binding arbitration." (ECF No. 2-1 ¶ 4.11(a)). "[M]utual promises to arbitrate act as an independently enforceable contract . . . [*i.e.*,] each party has promised to arbitrate disputes arising from an underlying contract, and 'each promise provides consideration for the other.'" *Holloman v. Circuit City Stores, Inc.*, 391 Md. 580, 593 (2006) (quoting *Cheek*, 378 Md. at 153-54); *see also O'Neil v. Hilton Head Hosp.*, 115 F.3d 272, 275 (4th Cir. 1997) ("[a] mutual promise to arbitrate constitutes sufficient consideration for this arbitration agreement"); *see also Johnson v. Circuit City Stores, Inc.*, 148 F.3d 373, 378 (4th Cir. 1998) (employer's "agreement to be bound by the same [arbitration] rules was sufficient" consideration). Because the

parties mutually agreed to be bound by the arbitration clause, the agreement was supported by adequate consideration.[4]

## B. Unconscionability

An unconscionable bargain or contract is "one characterized by 'extreme unfairness,' which is made evident by '(1) one party's lack of meaningful choice, and (2) contractual terms that unreasonably favor the other party.'" *Walther v. Sovereign Bank*, 386 Md. 412, 426 (2005). Thus, "Maryland contract law on unconscionability contains two components, a procedural and substantive aspect." *Dieng v. College Park Hyundai*, Civ. No. DKC 2009-0068, 2009 WL 2096076, at *5 (D.Md. July 9, 2009). In *Carlson v. General Motors Corp.*, 883 F.2d 287 (4th Cir. 1989), the Fourth Circuit explained the particular characteristics of procedural and substantive unconscionability:

> Substantive unconscionability involves those one-sided terms of a contract from which a party seeks relief (for instance, "I have the right to cut off one of your child's fingers for each day you are in default"), while procedural unconscionability deals with the process of making a contract – "bargaining naughtiness" (for instance, "Just sign here; the small print on the back is only our standard form"). Each of these

---

[4] The employee handbook also provides that any employment contract must be "in writing and signed by the chief executive officer of CoStar." (ECF No. 23-2, Ex. 2, at 2). Observing this, Plaintiff argues that the signature of CoStar general counsel, Mr. Coleman, on the agreement is insufficient and renders the contract unenforceable. This argument fails because, like her illusory promise argument, it requires the court to look beyond the four corners of the agreement.

> branches of unconscionability has common-law
> cousins; procedural unconscionability looks
> much like fraud or duress in contract
> formation, and substantive unconscionability
> reminds us of contracts or clauses contrary
> to public policy or illegal.

*Id.* at 296 n.12 (quoting J. White & R. Summers, *Uniform Commercial Code* § 403, at 186 (3d ed. 1988) (footnote omitted)). "The prevailing view is that [procedural and substantive unconscionability] must both be present in order for a court to exercise its discretion to refuse to enforce a contract or clause under the doctrine of unconscionability." *Holloman*, 391 Md. at 603 (quoting *Armendariz v. Found. Health Psychcare Servs., Inc.*, 6 P.3d 669, 690 (Cal. 2000)).

Plaintiff argues, in a cursory manner, that "the facts demonstrate both procedural and substantive unconscionability and the [c]ourt should refuse to enforce the instant employment agreement on grounds that it is unconscionable." (ECF No. 23-1, at 10). In the purported affidavit attached to her opposition papers, Plaintiff asserts that: (1) she "signed the document right away without really understanding what guarantees [she] was giving up . . . because [she] was told signing the document was a requirement for the job"; (2) she "did not understand what it meant by having to 'arbitrate using the American Arbitration Association's Employment Dispute Resolution Procedures'" and "[n]o one gave [her] those 'procedures' to review"; (3) "[n]o

one told [her she] would be waiving all rights to appeal any decision rendered through the use of these procedures or that [her] access to state and federal court[s] would be waived and barred by signing the document"; and (4) she is "unsophisticated in legal and business matters," had "never heard the word 'arbitrate' before," and CoStar "[took] advantage" of her by virtue of its unequal bargaining power. (ECF No. 23-2, Ex. 1). In sum, Plaintiff appears to argue that she "should not be held to an agreement that she signed, but did not have or take the time to read and understand." *Dieng*, 2009 WL 2096076, at *5.

Plaintiff does not cite any case law suggesting that CoStar had an obligation to ensure that she understood each and every term of the agreement prior to signing, nor is the court aware of any. In Maryland, the "general rule" is that "when one signs a release or other instrument, [s]he is presumed in law to have read and understood its contents, and [s]he will not be protected against an unwise agreement." *Vincent v. Palmer*, 179 Md. 365, 375 (1941); *see also Merit Music Service, Inc. v. Sonneborn*, 245 Md. 213, 221-22 (1967) ("the law presumes that a person knows the contents of a document that [s]he executes and understands at least the literal meaning of its terms"). If a party fails to read an agreement before signing, "they have no persons to blame but themselves"; courts are "loath to rescind a conspicuous arbitration agreement that was signed by a party

14

who[] [later], for whatever reason, does not desire to fulfill that agreement." *Walther v. Sovereign Bank*, 386 Md. at 444.

Plaintiff cannot claim that the arbitration clause at issue was inconspicuous. The clause was not buried in the middle of a lengthy contract or obscured by fine print; rather, it was set forth prominently, in its own section labeled "Arbitration of Controversies," on the final two pages of the six-page agreement. (ECF No. 2-1, at ¶ 4.11). Moreover, just below the clause and above the signature line, the agreement reiterated, in bold lettering, "Employee understands that by signing this Agreement, Employee agrees to resolve certain disputes with the Company by means of binding arbitration as set forth in paragraph 4.11, above." (*Id*. at 6 (emphasis removed)).

Plaintiff asserts that she felt pressure to sign the agreement quickly because "the job opportunity was imminent and [she] was concerned if [she] waited [she] might lose the opportunity." (ECF No. 23-2, Ex. 1, at ¶ 5). She acknowledges, however, that "the document provided time for [her] to consider signing it" (*id*.) and there is no indication that any CoStar representative discouraged her from taking all the time she needed. Indeed, according to the agreement, Plaintiff "had at least 21 days to consider" the arbitration clause before signing the agreement and could revoke within seven days thereafter. (ECF No. 2-1 ¶ 4.11(h)). Furthermore, Plaintiff acknowledged,

by her signature, that she signed "knowingly, voluntarily, and free from duress or coercion" (*id.*), and there is no indication that was not the case.

To the extent Plaintiff complains about the parties' unequal bargaining power, *i.e.*, that the agreement was presented to her on a "take it or leave it basis, with no opportunity for negotiation," *Walther*, 386 Md. at 430, she argues, in effect, that the agreement was a contract of adhesion. A contract of adhesion is "one 'that is drafted unilaterally by the dominant party and then presented on a 'take-it-or-leave-it' basis to the weaker party who has no real opportunity to bargain about its terms." *Id.* (quoting Restatement (Second) of Conflict of Laws § 187, cmt. b). The fact that a contract is one of adhesion, however, does not mean that it is procedurally unconscionable *per se*. Rather, "[a] court will . . . look at the contract and its terms with some special care . . . but it will not simply excise or ignore terms merely because . . . they may operate to the perceived detriment of the weaker party." *Id.* (quoting *Meyer v. State Farm Fire & Cas. Co.*, 85 Md.App. 83 (1990)).

As CoStar observes, Plaintiff has "identifie[d] no specific term or condition in the arbitration clause that is purportedly oppressive or impermissibly one-sided[.]" (ECF No. 24, at 13). In other words, she does not specifically allege that any term of the agreement was substantively unconscionable. *See Walther*,

386 Md. at 426 (substantive unconscionability "relates to the substantive contract terms themselves and whether those terms are unreasonably favorable to the more powerful party"). Instead, she argues, generally, that arbitration provisions present "a significant tactical advantage to the employer" and that including these provisions in contracts "with unsuspecting and unsophisticated employees, such as the Plaintiff, imposes a condition of substantial unconscionability." (ECF No. 23-1, at 9-10). In other words, according to Plaintiff, "the unequal bargaining relationship and the perceived advantage derived thereby in having an employee sign away substantive rights of judicial process creates an 'unreasonably favorable' situation to the dominant party to the agreement." (*Id*. at 10).

It is not at all clear how the agreement might be "unreasonably favorable" to CoStar, nor does Plaintiff address this point in any detail. While it is true that the agreement limits Plaintiff's access to the state or federal court system, it also empowers an arbitrator "to award any types of legal or equitable relief that would otherwise be available in a court of competent jurisdiction." (ECF No. 2-1 ¶ 4.11(c)). Lest there be any doubt as to the claims that Plaintiff could raise in arbitration, the agreement spells them out, in no uncertain terms, to include each of the claims she brought in her civil complaint. (*Id*. at ¶ 4.11(a)). Thus, the agreement does not

deprive Plaintiff of the right to raise any substantive claim; rather, it merely requires that those claims be decided by an arbitrator instead of a court. Moreover, it imposes the same obligations on CoStar, and even requires the employer to pay all associated "costs of commencing arbitration and the remainder of the arbitration fees." (*Id.* at ¶ 4.11(f)).

In sum, Plaintiff has failed by a wide margin to establish that the arbitration provision is procedurally or substantively unconscionable.

## C.    Waiver

Plaintiff further contends that CoStar waived its right to arbitrate due to its delay in demanding arbitration and involvement in this litigation.[5] She asserts that compelling arbitration at this juncture would result in prejudice to her insofar as she has "committed substantial resources to attempt[ing] to have her case litigated" in court. (ECF No. 23-1, at 13).

Under the FAA, "a party loses its right to . . . arbitrate if it is 'in default in proceeding with such arbitration.'" *Forrester v. Penn Lyon Homes, Inc.*, 553 F.3d 340, 342 (4th Cir. 2009) (quoting 9 U.S.C. § 3). A "default" in this context is

---

[5] Both parties assume this issue is for the court, rather than the arbitrator, to resolve. The question is not free from doubt, as shown in the discussion in *Bank of America Securities LLC v. Independence Tube Corp.*, No. 09 C 7381, 2010 WL 1780321, at *4-6 (N.D.Ill. May 4, 2010).

similar to the concept of waiver, but "due to the strong federal policy favoring arbitration, courts have limited the circumstances that can result in statutory default." *Forrester*, 553 F.3d at 342-43 (citing *Maxum Foundations, Inc. v. Salus Corp.*, 779 F.2d 974, 981 (4th Cir. 1985)). As the Fourth Circuit explained in *Forrester*, 553 F.3d at 343:

> [S]imply failing to assert arbitration as an affirmative defense does not constitute default of a right to arbitration. *See Am. Recovery Corp. v. Computerized Thermal Imaging, Inc.*, 96 F.3d 88, 96 (4th Cir. 1996). Similarly, delay and participation in litigation will not alone constitute default. *See [MicroStrategy, Inc. v. Lauricia*, 268 F.3d 244, 250-52 (4th Cir. 2001)]. But a party will default its right to arbitration if it "so substantially utilize[es] the litigation machinery that to subsequently permit arbitration would prejudice the party opposing the stay." *Maxum Founds.*, 779 F.2d at 981. The "heavy burden" of showing default lies with the party opposing arbitration. *Am. Recovery Corp.*, 96 F.3d at 95.

Plaintiff has failed to meet that burden here. Initially, it cannot be said that Defendants have "utilized the litigation machinery" to such an extent that permitting arbitration would result in any significant prejudice to Plaintiff. Plaintiff commenced this action on February 6, 2011; Defendants were served on March 2 and removed to this court on March 28. They answered the complaint on April 4 and moved to compel arbitration three days later. Thus, Defendants demanded

arbitration just over one month after service was effected. *See*
*Lauricia*, 268 F.3d at 250 (a one month delay between filing of
complaint and assertion of right to arbitration, without more,
is "insufficient to support a finding of waiver"); *Maxum*
*Foundations*, 779 F.2d at 982 (finding no prejudice in delay of
three months). It cannot be said that the litigation has
advanced to any significant degree; indeed, a scheduling order
has not yet been issued and discovery has not commenced. *See,*
*e.g., Patten Grading & Paving, Inc. v. Skanska USA Building,*
*Inc.*, 380 F.3d 200, 206-07 (4th Cir. 2004) (finding no default
where the party favoring arbitration waited four months and
until some discovery was completed, but had not yet taken
depositions or filed a dispositive motion); *Carolina Throwing*
*Co. v. S & E Novelty Corp.*, 442 F.2d 329, 330-31 (4th Cir. 1971)
(finding no default where party filed an answer and counterclaim
and waited four months before moving to compel arbitration).
More significantly, Plaintiff's vague claim of prejudice, *i.e.*,
that she has "committed substantial resources to attempt[ing] to
have her case litigated" in court (ECF No. 23-1, at 12), is
insufficient to meet the "heavy" burden of showing that
Defendants have defaulted their right to arbitrate. *See Patten*
*Grading*, 380 F.3d at 205-06 (finding party seeking to avoid
arbitration failed to meet its "heavy burden of demonstrating
prejudice" where, "apart from conclusory allegations, [it]

20

fail[ed] to identify any consideration supporting such a conclusion").

### D.    Remedy

In sum, the arbitration agreement is supported by adequate consideration, is not unconscionable, and Defendants have not defaulted their arbitration rights.  Thus, the agreement will be enforced.  Pursuant to its express terms, the arbitration provision applies to both defendants – CoStar and Ms. Wallis – and to all claims raised by Plaintiff in this action.  Because all of Plaintiff's claims are subject to binding arbitration, the proper remedy is dismissal of the complaint.  *See Choice Hotels Int'l*, 252 F.3d at 709-10.  Accordingly, Plaintiff's complaint will be dismissed.

## IV. Conclusion

For the foregoing reason, Defendants' motion to compel arbitration will be granted.  A separate order will follow.

```
_____/s/_____
DEBORAH K. CHASANOW
United States District Judge
```